UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20649-CR-Middlebrooks/Garber

UNITED STATES OF AMERICA,

v.

WENDELL MAXWELL,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Donald M. Middlebrooks. Pursuant to such reference, the Court has received the defendant Maxwell's Renewed Motion to Suppress Physical Evidence and Statement [DE 24] and the government's Supplemental Response [DE 35]. A hearing on said Motion was held on December 20, 2011. The defendant appeared with his attorneys of record, Assistant Federal Public Defenders Christy O'Connor and Hector Dopico, and the government was represented by Assistant United States Attorney Karen Stewart.

## FACTUAL BACKGROUND

On January 7, 2010, a Confidential Informant (CI) contacted Sergeant Charles Weiss, Supervisor of the gang unit and crime suppression team of the Miami Beach Police Department. His unit is made up of him, Detectives Figueroa, Pagan, Archer, and Officer Socarras. Weiss has many years of experience as a police officer, the last four as a sergeant.

On January 7, 2010, at about 3:00 P.M., Weiss received an unexpected telephone call from a CI with whom he had worked in the past. Weiss testified that in the past two years the CI had

provided him with information leading to the recovery of stolen firearms, the capture of wanted fugitives and violent felons. In addition, the CW had provided between 10 and 15 tips regarding criminal activity, the majority of which resulted in arrests based on probable cause. Weiss testified that he found the CI to be reliable, truthful, and knowledgeable. Weiss further advised that his CI did not receive any payment for his services, although he received probation from a state charge in which he was obligated to report to law enforcement any evidence or information that he had regarding criminal activity.

In his telephone call of January 7, the CI told Weiss that he was with a man called "Max," who advised him that he had arranged for a narcotics transaction at or around 20th Street and Washington Avenue on Miami Beach. Max also told the CI that he planned on turning the transaction into a "rip," which meant that he intended to rob the person who was buying the narcotics. Max also advised the CI that if the drug purchaser resisted, he would shoot him in the face. The CI provided Weiss with a description of Max: that he was a black male, approximately 5'5" tall, and weighing about 125 pounds, wearing a grey sweater, white t-shirt, blue jeans and having a goatee. The CI told Weiss that Max had a gun on his right ankle and planned to use it during the robbery. The CI also advised that he knew the defendant from a prior experience.

Upon receipt of such information from the CI, Weiss and members of his unit proceeded to the area mentioned by the CI, the area where the drug transaction was to take place. Weiss stationed his team members at various positions in the designated area. Weiss then observed the defendant walking with the CI on 20th Street. Weiss testified that the defendant matched the description given by the CI and his identity was further established since he was walking with the CI.

Detective Pagan, a member of Weiss's unit, took out his badge and approached the defendant, advising him to stop and identifying himself as a police officer. The defendant was approached by Detective Pagan and then began to run. Weiss witnessed all of these incidents. Detective Pagan caught the defendant and a struggle ensued. Detective Figueroa approached and yelled out "gun, gun" when the defendant reached for his right ankle during the struggle. Detective Pagan, during his struggle with the defendant and after reference was made about a gun, struck the defendant several times in his face and the weapon, held by the defendant, was released and found in the street. It was recovered by Detective Figueroa. Weiss then assisted Detective Pagan in handcuffing the defendant and placing him under arrest. The defendant, after being told to stop resisting, stated, as he did throughout the entire incident, that they would have to kill him since he was not going back to prison. All of this and such other similar statements made by the defendant prior to and at the time of his arrest were made freely and voluntarily, not in response to any questioning by the police.

A fire rescue unit arrived at the scene in order to take care of the defendant's injuries sustained during his fight with Detective Pagan. The defendant refused aid and then stood up and again attempted to run. He was chased, caught, and seated on steps in the area. He again told the police that "you should have killed me, I'm a third strike, I can't go back."

Subsequent to his arrest and while at the Miami Beach Police station house, the defendant waived his *Miranda* rights and admitted that the firearm was his and he carried it for "protection" since people in various parts of the county wanted to kill him. He did not elaborate. Other issues have been raised by the defendant, all of which are found by the Court to be irrelevant to the issue

of whether the defendant was a felon in possession of a firearm. Accordingly, such issues will not be considered by the Court.

## DISCUSSION

The only relevant issue presented by the defendant's Motion to Suppress is whether there was probable cause to arrest the defendant. Testimony and evidence presented by the government at the hearing clearly show the existence of such probable cause.

At the outset, it is without question that law enforcement had the requisite reasonable suspicion to conduct a lawful investigatory stop of the defendant. The police are authorized, pursuant to the Fourth Amendment of the United States Constitution, to stop and detain persons based upon a need to investigate a reasonable suspicion that such person has engaged in or is likely to engage in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *Illinois v. Wardlow*, 528 U.S. 119 (2000); reasonable suspicion being more than just a hunch, since the Fourth Amendment requires at a minimum some objective justification for the investigatory stop. *United States v. Acosta*, 363 F.3d 1141 (11th Cir. 2004). Reasonable suspicion is far less than a preponderance of the evidence or even the requirement of probable cause that evidence of a crime will be found. *United States v. Mickell*, 102 F.3d 470 (11th Cir. 1996).

Here, it is clear that the Police had, at a minimum, reasonable suspicion that the defendant was about to commit a crime. He matched the CI's physical description, clothing, and appeared at the location described by the CI. He also appeared with the CI at the designated location where the CI advised that the crime was to take place. The CI's ability to advise of the defendant's future actions bolsters the existence of a reasonable suspicion, when considered with the totality of the information relayed by the CI. *United States v. Lee*, 68 F.3d 1267 (1995).

The defendant's attempted flight may give officers a reasonable suspicion to permit his detention to further investigate. Indeed, the defendant's attempts at fleeing ultimately led to the discovery that the defendant was in possession of a firearm, an essential component of the offense for which the defendant was ultimately charged.

Aside from the issue of a *Terry* stop, the tip received from the CI established probable cause for the arrest of the defendant. The Supreme Court, in its ruling in *Illinois v. Gates*, recognized and approved "a totality of the circumstances" consideration in determining whether the information furnished by the CI is sufficient to establish probable cause. Such totality concept considers such factors as corroboration of the tip by independent police work; any personal knowledge of the CI; any past history between the CI and the relevant police department that establishes his reliability; and any additional steps taken by the police to further investigate the tip. *United States v. Gonzalez*, 969 F.2d 999, 1002-1003 (11th Cir. 1992).

The Court, having heard the testimony of the government's witnesses, finds each witnesses' testimony to be highly credible and totally supportable of this Court's recommendation.

The Court is satisfied that, when measured by the above criteria, the police had ample probable cause to arrest the defendant based upon the information relayed by the CI and the defendant's attempts to flee. Such probable cause was also strengthened by the defendant's retrieval of his firearm from his right ankle following his being stopped by the police. Once a determination was made that the defendant had a previous felony conviction, the basis then existed for him to be charged with the offense of being a felon that had been sentenced to a term of imprisonment for over a year being in possession of a loaded firearm. His arrest must therefore withstand the defendant's efforts of suppression based upon a lack of probable cause for his arrest.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the submissions of the parties and the testimony of the government's witnesses, the undersigned respectfully

RECOMMENDS that the defendant Wendell Maxwell's Renewed Motion to Suppress Physical Evidence and Statements [DE24] be DENIED.

The parties have fourteen (14) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. See 28 U.S.C. §636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 22nd day of December, 2011.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE